(No. 77-CC-0521–)

JAMES R. POTTER and THOMAS F. LONDRIGAN, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 8, 1983.*

LONDRIGAN & POTTER, for Claimants.

NEIL F. HARTIGAN, Attorney General (WILLIAM WEBBER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

James R. Potter and Thomas F. Londrigan bring this claim for attorney fees alleged to be due Claimants for services rendered to the State of Illinois Department of General Services (hereinafter called DGS).

In September of 1973, DGS was preparing to challenge Illinois Bell Telephone's request for a rate increase in proceedings before the Illinois Commerce Commission. DGS had been granted leave to intervene in the proceedings because the State of Illinois is a consumer of telephone services and the increase, if granted, would have increased State expenditures for telephone service by $3 million. The Director of DGS, Roland Burris,

believed that in proceedings of such magnitude, the Department would be best served if it was represented by an attorney. He therefore contacted the Claimant James Potter to discuss the matter.

On September 5, 1975, Kenneth Whitney, Chief Counsel for DGS, sent the following letter to William I. Goldberg, Chief Counsel to the Governor:

"Dear Mr. Goldberg:

Director Burris suggested that I send to you for approval the enclosed letter addressed to Attorney General Scott.

As you are aware, we have retained Mr. Potter to represent us in the Illinois Bell Telephone Company rate case (Illinois Commerce Commission, Docket No. 59666).

Mr. Potter is to be paid at the hourly rate of $55.00, and reimbursed for incidental expenses, including, but not limited to, travel and accommodations.

If the letter meets with your approval, please forward to the Attorney General. If not, please advise.

Very truly yours,

Kenneth A. Whitney
Chief Counsel

KAW:mjl
Enclosure"

Goldberg replied by writing the following advice on the original letter, which he then sent to Whitney:

"He (Potter) does not need to be appointed to represent (the) Department in (an) administrative proceedings. Arrangement is fine."

Goldberg also enclosed copies of correspondence between Thomas Murphy, Director of the Illinois Liquor Control Commission, and Bernard Genis of the Attorney General's Office, dated July 7, 1975, in which Mr. Genis states:

"It is the policy of this office to avoid any and all situations where a conflict of interest may arise. This would come about in situations where, as here, two state agencies are adverse or may take an adverse position in a particular matter. Since we are also the attorneys for the Fair Employment Practices Commission which may take an adverse position to yours in this matter, we must decline your request for representation herein.

Moreover, we will decline to represent either agency herein unless, and until their positions are compatible, as on administrative review, should it occur."

Goldberg believed that these comments were relevant, since the Attorney General's Office is required by statute to represent the Illinois Commerce Commission.

There is no evidence that Goldberg had ever been in contact with the Attorney General's Office regarding the appointment of Potter, nor is there any evidence that DGS had been in contact with the Attorney General's Office regarding the appointment of Potter. Potter did not contact the Attorney General's Office and the Attorney General's Office was never apprised of a potential conflict.

On September 24, 1975, Burris sent Potter a letter confirming the oral agreement to pay Potter $55.00 per hour, plus expenses, up to a sum not to exceed $25,000.00. All bills were to be submitted to DGS for payment. This letter was accepted and signed by Potter.

According to the itemized bills submitted by Potter, he began preparing for the hearing on December 1, 1975, and he performed 135.75 hours of service for DGS between that date and March 8, 1976. On February 4, 1976, the Illinois Commerce Commission issued a ruling granting Illinois Bell a rate increase of $70.4 million dollars, which was $115 million dollars less than originally requested. Illinois Bell immediately sought administrative review in the Circuit Court of Sangamon County and appealed those rate increases which had been denied, and Governor Walker ordered DGS to cross-appeal the increase which the Illinois Commerce Commission decision granted. On March 8, 1976, Walter Russell, the then-acting director of DGS, wrote to the Attorney General's Office and requested that Potter be appointed as a special assistant attorney general for the Department of

General Services. Attorney General Scott answered on May 18, saying that he was instead appointing special assistant attorneys general John P. Meyer and Randall Robertson in the administrative review proceedings. On April 7, Potter entered his appearance in the circuit court for DGS. Director Burris answered Attorney General Scott's letter on April 13, 1976, and stated that DGS did not find the appointment of Meyer and Robertson to be satisfactory. He felt that "it would be more efficient" to continue with Potter. Attorney General Scott answered on April 14 by stating that the appointing of an attorney by DGS was illegal and that he would notify the Comptroller, George Lindberg, that payment of funds to any attorney appointed by DGS would be unauthorized. Mr. Burris' response of April 21, 1976, follows:

"I am in receipt of your letter of April 14, 1976 regarding the Department of General Services proposed arrangement for representation in the above-entitled matter.

You stated that you were very surprised to learn, from my letter of April 13th that I 'had appointed an attorney to represent the Department of General Services in the Illinois Bell rate case.' I have not 'appointed' an attorney to represent the Department in the appeal of the I.C.C. decision. Indeed, on March 8, 1976, Walter Russell, then Acting Director of this Department, wrote to Dean Herzog of your office summarizing the status of the proceedings and requesting your authorization to have the same attorney represent us in the appeal who had represented the Department in the administrative proceedings. A copy of that letter is enclosed. Indeed, I had assumed that, in view of the public importance and notoriety given to those proceedings you were aware of the Department's intervention and representation in that matter.

I was, frankly, surprised and disturbed at your March 18 reply to the March 8 letter, which implicitly refused our request and designated—without consultation—two attorneys who have no familiarity with the case.

In this regard, I understand that your office represents the Illinois Commerce Commission, the administrative agency whose decision we are contesting. In these circumstances there would, I believe, be a conflict of interest if your office insisted on choosing and controlling the attorneys who are to represent the interests of this Department which are directly adverse to the Commission.

In our judgment, Mr. Potter ably represented this Department in the administrative proceedings before the Commission. He is thoroughly familiar

with the record. If you do not wish to appoint Mr. Potter as Special Assistant Attorney General, then I would request that you give your consent to his representing the Department in this matter so that we can prosecute the appeal without disputes as to authority."

Burris received no further reply from the Attorney General's office.

On May 3, 1976, Potter refused to sign a stipulation on behalf of DGS, since he had not received authorization from the Attorney General's Office. Potter then sought directions from the Sangamon County Circuit Court on June 15, 1976. On June 30, the Circuit Court ruled that it would not give directions to either DGS or to Potter. Potter then signed a new agreement with DGS and filed a separate complaint for an injunction and declaratory judgment on behalf of DGS against the Attorney General that same day, in which DGS sought a declaration that a conflict of interest existed in the Attorney General's attempt to represent the Department and the Illinois Commerce Commission and also an injunction restraining the Attorney General from seeking to represent the DGS or from interfering with its right to contract for legal services. On July 23, 1976, after notice and hearing, the Circuit Court entered a preliminary injunction restraining the Attorney General from representing either the Illinois Commerce Commission or the Department of General Services and also restraining the Attorney General from interfering with DGS' retention of "contractual legal services independent of (the Attorney General's) Office." On August 6, at the request of the Illinois Commerce Commission, this order was modified to allow the Attorney General to represent the Illinois Commerce Commission. On August 9, the Attorney General sought to withdraw its representation of the Illinois Commerce Commission, but the request was denied by the Circuit Court. On August 20, 1976, the Attorney General sought review of both the injunction and the subsequent order

in *mandamus* actions before the Illinois Supreme Court. Meanwhile, pursuant to the circuit court orders, Potter and his partner, Thomas F. Londrigan, the other Claimant, represented DGS in the supreme court proceedings. (*Scott v. Cadigan* (1976), 65 Ill. 2d 477, 358 N.E.2d 1125.) According to the itemized billing submitted by Potter, he spent 6.75 hours on the appeal to the Sangamon County Circuit Court and he and his partner spent 133.0 hours preparing for the suit against the Attorney General's Office and the subsequent review by the Illinois Supreme Court. Potter also alleges that he incurred $322.18 in expenses. Of that $322.18 in expense money, $176.43 was from the Illinois Commerce Commission hearing, $111.41 was from the administrative review, and $34.34 was from the suit against the Attorney General. Claimants state that they are therefore entitled to $15,152.50 in fees for legal services and $322.18 in expenses, for a total of $15,474.68. Vouchers for these claims were submitted to the Comptroller of the State of Illinois, who has refused payment. The facts are presented by stipulation of the parties.

In the opinion of the Court, the claims must be divided into two parts: (1) those claims arising out of the Illinois Commerce Commission hearing; and (2) those claims arising out of the Claimants' suit against the Attorney General.

The claims arising out of the DGS suit against the Attorney General are clearly allowable. Section 6 of "An Act in regard to attorneys general and state's attorneys" provides that a court may appoint special counsel in place of the Attorney General whenever the Attorney General "is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend." (Ill. Rev. Stat. 1975, ch. 14, par. 6.) The term

"interest" had been defined to include two situations. The first situation is where the Attorney General is interested as a private individual; the second is where the Attorney General is an actual party to the action. (*E.P.A. v. Pollution Control Board* (1977), 69 Ill. 2d 394, 396, 372 N.E.2d 50, 52.) In the suit seeking to enjoin the Attorney General from interfering with DGS' hiring of outside legal services, the Attorney General was a named party to the suit. DGS was therefore entitled to court-appointed counsel. The circuit court authorized Claimants to prosecute this suit. They are therefore entitled to reasonable compensation from the State for the services provided in the suits filed by DGS in the circuit court and in the *mandamus* actions in the supreme court. The claim for legal services rendered in the Illinois Commerce Commission hearings is somewhat different, however.

Article V, section 15 of the Illinois Constitution of 1970 provides that "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." In *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149, the Illinois Supreme Court held that this provision means the Attorney General is the sole officer entitled to represent the State in administrative reviews, and therefore any legal representation of a State agency before an administrative review board which is not authorized by the Attorney General's Office is in violation of Article V, section 15.

Claimants argue that DGS sought the approval of the Attorney General but that William Goldberg, chief counsel to the Governor, informed them that the Attorney General's approval was not necessary pursuant to a policy that the Attorney General had recently adopted not to take sides where two agencies might come into conflict. Since the Attorney General is required to repre-

sent the Illinois Commerce Commission, Claimants argue that they were not required to seek the approval of the Attorney General. Claimants' argument must fail for at least two reasons. First, according to the supreme court, the Attorney General is the sole legal representative of the State of Illinois unless the Attorney General is named in the suit or unless he is involved as a private individual. The Attorney General may even represent conflicting State agencies if it chooses to do so. (*E.P.A. v. Pollution Control Board* (1977), 69 Ill. 2d 394, 372 N.E.2d 50; *People ex rel. Scott v. Briceland, supra.*) Therefore, implicit in the Attorney General's powers is the right to examine the legal position of State agencies involved in conflicts and the right to determine on a case-by-case basis whether the Attorney General should become involved in the conflict. The Attorney General was never given such an opportunity in this case. Neither Goldberg, nor anyone from DGS, nor anyone from Potter's office ever contacted the Attorney General.

Second, Claimants' argument is based on their belief that Genis' letter to Murphy at the Illinois Liquor Control Commission granted to DGS implied permission to contract for outside legal services without informing the Attorney General if DGS believes that a potential conflict of interest may arise. The Court, however, does not believe that the facts support Claimants' position. Genis' letter was interoffice correspondence between the Attorney General's Office and the Liquor Control Commission. There is no evidence in the record that the letter was meant to be a blanket policy that allows any department to unilaterally commission outside legal services. Even accepting that the letter represents a strict policy of the Attorney General and that this policy has no exceptions, all State agencies are still required to inform the Attorney General of potentially conflicting positions

between State agencies so that the Attorney General can evaluate whether potential conflict does in fact exist. Furthermore, the Court is not satisfied that the letter represents a strict policy of the Attorney General. Office policies are not rules of law and are subject to change at any time. In a situation such as this one, it is incumbent upon the agency involved to contact the Attorney General to determine whether the general policy applies based upon the specific factual situation present. No contact was made with the Attorney General regarding the appointment of Claimant Potter before the Illinois Commerce Commission hearings. The appointment of Potter was therefore clearly in violation of State law.

This Court has repeatedly held that in such cases where a person has rendered services at the instance of persons mistakenly purporting to have State authority to contract, those claims must go uncompensated no matter how unjust it may seem. (*Schutte & Koerting Co. v. State* (1957), 22 Ill. Ct. Cl. 591; *Wasson v. State* (1939), 10 Ill. Ct. Cl. 497.) In *Wasson*, this Court held

"that whoever deals with a municipality does so with notice of the limitations on it or its agent's powers. All are presumed to know the law, and those who contract with it or furnish it supplies, do so with reference to the law, and, if they go beyond the limitations imposed, they do so at their own peril." 10 Ill. Ct. Cl. 497.

The Court finds that $7,074.34 in legal fees and $34.34 in expenses are attributable to the cases for which compensation should be granted. The Court hereby awards Claimants the amount of $7,074.34 in legal fees and $34.34 for expenses.