(No. 77-CC-1524–)

EDWIN W. DUNTEMAN, JR., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 5, 1985.*

*Order on motion for reconsideration filed August 16, 1985.*

BAKER & BELLATTI, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

MONTANA, C.J.

Claimant, Edwin W. Dunteman, Jr., brings this claim for alleged breach of contract by the State. The contract in question is the alleged lease of a certain tract of farmland located at the Illinois Youth Center, St. Charles, Illinois, owned by the Illinois Department of Corrections.

The relationship between the Claimant and the State began in March of 1970 when the Claimant signed a lease with the Department of Corrections for the farmland. The lease provided that the Claimant would farm the land and pay a certain amount to the Department of Corrections. This lease was extended until December 19, 1971, by a written agreement of both parties. The same practice was followed in 1972, when

the lease was extended to December 31, 1972. Thereafter, however, the leasing arrangements between the State of Illinois and Claimant became informal, and the previous written formalities were not followed.

According to the Claimant, in order to farm the land in question profitably, the land must be prepared for farming during the fall so that it may be harvested in July of the following year. For example, preparation for the crop that would be harvested in July of 1973 would be accomplished by the farmer in the fall of 1972. This immediately presents a problem for the farmer, since the lease agreements normally run from January 1 to December 1. The farmer is therefore placed in the undesirable position of having to prepare the ground for planting in the fall of the year despite the fact that his lease will end before the crop is harvested the following year. Such a situation gave rise to this claim.

In order to solve this dilemma, the Claimant routinely entered into oral negotiations with Victor Lenkaitis, the farm manager for the Illinois Department of Corrections at the St. Charles facility. According to the Claimant, he and Mr. Lenkaitis would begin conversations sometime after the harvest every year to determine whether the Claimant's lease was to be renewed and whether it was permissible for him to begin planting for next year. Mr. Lenkaitis would then contact his superiors and notify Claimant after a decision had been made.

The Claimant testified that this was the procedure followed in 1972 and that he farmed the land under an oral agreement to renew the contract through the end of 1973. He further states that the same procedure was followed in 1973 to allow him to farm the land for the

1974 harvest. The State has produced no evidence to dispute this.

The parties began using written contracts again in 1975. The evidence shows that in June of 1975 the State of Illinois, through the Department of General Services, entered into a written contract with the Claimant for the lease of the land in question retroactive to January 1, 1975, and effective through December 31, 1976.

After the harvest in 1976, the same problem arose that had occurred in previous years. The Claimant was once again left in the position of having to decide whether to begin preparing the ground in the fall of 1976 for the harvest in 1977, given the fact that his lease expired on December 31, 1976.

The Claimant states that at this point he did the same thing which he did every year—that is, he contacted Mr. Lenkaitis and asked whether he should go ahead with the planting. The Claimant states that Mr. Lenkaitis told him to proceed and that the documents would follow later. Mr. Lenkaitis, on the other hand, testified that when he contacted his superiors in 1976 concerning the lease for the year 1977 he could not get a definite answer and he informed the Claimant of that fact. He also told the Claimant that based on past practices "we would plan to continue it as we had been unless we heard differently." Mr. Lenkaitis then testified that he observed the Claimant preparing the field for planting in the same manner that he had every other year. When asked whether he had done anything to stop the Claimant from planting, Mr. Lenkaitis testified that he had not. When asked whether he had instructed the Claimant to begin planting Mr. Lenkaitis testified that he had not. When asked if he had the authority to enter into

a lease with the Claimant for this property, Mr. Lenkaitis testified that he did not have that authority.

Both the Claimant and Mr. Lenkaitis agreed that they heard nothing further concerning the renewal of the lease until December of 1976. At that time Mr. Bietsch from the Department of General Services contacted the Claimant and informed him that there would be a change in procedures and that the land in question would be leased by a bidding procedure effective January 1, 1977. The Claimant testified that this was the first time he had heard about the bidding procedure and that he immediately protested, but to no avail.

In January of 1977 bids were submitted to the Department of General Services by several farmers in accordance with bidding instructions issued by the Department of General Services. Instruction No. 5 stated "the State of Illinois Department of General Services reserves the right to reject any or all bids."

Despite his protest that the entire procedure was improper and unfair, the Claimant decided that it would be in his best interest to enter into the bidding. The Claimant therefore submitted a bid to the Department of General Services along with several other farmers, and these bids were duly opened on January 17, 1977. The Claimant was the high bidder with a bid of 61.2 bushels per acre. There were three other bids, of 43.6 bushels per acre, 32 bushels per acre, and 22 bushels per acre, respectively. The Claimant states that after he was informed that he was the highest bidder but before the formal agreement was signed with the Department of General Services, he purchased the seed and chemicals necessary for planting the crop. On February 4, 1977, the Claimant was advised by the State by letter that all bids

were being rejected and the farmland in question would be rebid. The Claimant and his attorneys immediately protested to the Department of General Services and the Governor. In his protest the Claimant stated that he felt that it was unfair to make him bid against himself and that he would not participate in the second bidding. In keeping with this position, the Claimant did not submit a second bid, and the lease was awarded to another farmer who submitted a bid of 46.0 bushels per acre. The Claimant then brought this action against the State of Illinois for breach of contract.

It is the opinion of the Court that this claim should be denied because there was no valid contract between the Claimant and the State. The Claimant bases his contract claim on the oral representations of Mr. Lenkaitis from the Illinois Department of Corrections. That reliance is misplaced. It is a well settled principle of law that in dealing with an agent of the State one must ascertain at his peril the authority of the agent, and the mere assertions of the agent are not sufficient to bind the State. (*Midwest Truck Sales & Auto Disposal v. State* (1979), 33 Ill. Ct. Cl. 82.) The testimony in this case clearly indicates that not only did Mr. Lenkaitis not have the authority to bind the State of Illinois but also that the Claimant knew that Mr. Lenkaitis did not have the authority to bind the State of Illinois, since Mr. Lenkaitis always had to check with his superiors before relaying any commitment to the Claimant. Furthermore, the Claimant was aware of the formal requirements of the State when it came to lease agreements, since he had entered into several written lease agreements in the past. While it is true that the Claimant had entered into oral lease extensions in the past, the Claimant knew that there was confusion surrounding this lease contract in question and proceeded at his own peril.

Furthermore, even if there were a valid contract, the Claimant failed to mitigate his damages, as is his duty by law. The law is clear that a Claimant must do all in his power to mitigate his damages. (*Sullivan v. State* (1967), 26 Ill. Ct. Cl. 117; *Slaughter v. State* (1979), 33 Ill. Ct. Cl. 174.) In this instance the Claimant could have mitigated all of his damages by simply refiling his original bid to lease the property. Claimant's argument that to submit a second bid in this case would have been to bid against himself is not a proper defense. Under the terms of the original 1977 bidding instructions, the State was entitled to reject any and all bids. Until such time as the State formally accepted the Claimant's bid and entered into a contract with him, no contract existed between the State and the Claimant. The State had no duty to accept the Claimant's original bid, nor did the Claimant acquire any rights by virtue of his original bid. Thus, any relationship that could have arisen by virtue of Lenkaitis' representations to Claimant was voided by Claimant's failure to make all reasonable efforts to mitigate his damages. The Claimant's failure to perform the simple act of resubmitting a bid which had already been prepared was an unreasonable refusal to mitigate his damages.

Accordingly, this claim is denied.

## ORDER ON MOTION FOR RECONSIDERATION

MONTANA, C.J.

This cause coming to be heard on Claimant's motion for reconsideration, all parties having been given notice and the Court being fully advised in the premises;

It is hereby ordered:

That Claimant's motion for reconsideration is denied.