(No. 84-CC-0295–

EDWARDS FARM SUPPLY CO., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 29, 1989.*

JAMES L. AYERS, for Claimant.

NEIL F. HARTIGAN, Attorney General (CHARLES L. PALMER, Assistant Attorney General, of counsel), for Respondent.

MONTANA, C.J.

This claim was initiated by the July 26, 1983, filing of a complaint by the Claimant, Edwards Farm Supply Co. The Claimant sought $45,000 in damages based on the Respondent's failure to award contract No. R-045 to Claimant as the lowest responsible bidder. The claim was tried before Commissioner Robert Frederick. Both sides have fully briefed all issues and Commissioner Frederick has duly filed his report. Oral argument was heard before the judges of the Court of Claims in January of 1989.

The Claimant is a corporation whose primary business is selling farm chemicals and fertilizers and its president is Larry Edwards. The University of Illinois (University) operates certain large farms in and about Piatt County, Illinois. Each year the University requests bids for the fertilizers to be applied in the fall.

Edwards had been a successful bidder for the University's business for years. In 1981, Edwards obtained the fertilizer contract. In 1982, Edwards again made a bid on the fertilizer contract which was known as proposal no. R-045. The bid of Edwards was $67,552.20, but included language as follows, "Price includes a 10% cash discount if payment is made within 15 days of billing." The company with the best fertilizer bid usually also gets the University's limestone bid.

Mr. Edwards testified that Exhibit 1 was a copy of the bid Edwards made for the fertilizer contract for

1982, which is the contract at issue in this cause. Exhibit 4 was a copy of Edwards' successful bid for the prior year of 1981. Edwards had successfully completed the 1981 contract. Edwards used a 15-day cash discount of 10% to all customers. This discount was added to and included on the 1982 fertilizer bid. This language did not appear on the 1981 bid.

After Edwards made the 1982 bid, he waited until the date of opening, August 31, 1982, and as he testified he usually did, he called Mr. Reuter's office at the University. Mr. Reuter was the purchasing agent and was the person Edwards usually talked with. However, on August 31, 1982, when he called the University as to the 1982 bid, Mr. Reuter had already left the office for the day and he spoke to a Mr. Sapoznik who was also a purchasing agent. Edwards wanted to know who was the lowest bidder on the 1982 fertilizer contract. Edwards testified that Mr. Sapoznik stated that Mr. Reuter was away from his desk, but he would look and see if the papers were on his desk. They were and Mr. Sapoznik read Edwards the figures. Mr. Sapoznik then told Edwards it looked like he was the successful bidder and congratulated him.

After this call, Edwards had no contact with the University in reference to this alleged contract until sometime in September when he observed a competitor supply the fertilizer Edwards thought he would be supplying. Upon calling the University, Edwards was told he was not the successful bidder because the University could not pay within time to qualify for the cash discount. Without the 10% discount, Edwards no longer had the lowest bid.

Edwards testified that in the past, when the University went beyond the 15 days for payment, he still

gave the discount even up to two or three months. He testified that in 1981 the bill went out December 9, 1981, and he deposited the check on December 21, 1981.

For the 1983 bid, the State changed the form to make all bids net 30 days after receipt of merchandise or delivery of invoice voucher, whichever is later.

Mr. Edwards calculated his damages in Exhibit 6. He calculated his lost profits and interest lost at $11,687.65. He had to store the product and did not dispose of it to others until the spring. He also figured into that amount the total lost profits on what he thought tenant farmers would have purchased if he had received the master contract. Edwards usually received the tenants' business when he received the University contract in prior years.

On cross-examination, Mr. Edwards admitted he had not used the discount language in his 1981 bid and he had never used the language "Price includes a 10% discount if payment is made within 15 days of billing" before on any bid to the University. This language would add a substantial amount to the contract price if payment was not made within 15 days. In the past, the University had paid Edwards only once in less than 30 days.

Mr. Reuter, the buyer for the University, testified that they are bound by regulations in purchasing, that they could reject all bids, and that no contract exists until a purchase order is sent out by the University. No purchase order was sent to Edwards so there was no contract. Mr. Reuter calculated the bid at $75,058 if payment was not made within 15 days of billing. It was the consensus of opinion by University regulators that payment could not be made in 15 days. The contract

was awarded to Monticello Ag Center which bid $71,778 and that bid was determined to be the lowest and best bid. Mr. Reuter specifically found the Edwards bid to be unclear and too contingent based on the discount if payment was made in 15 days. The University system is such that obtaining approvals for payment within the bureaucratic process takes more than 15 days.

John W. Gomperts, the director of purchases for the University in 1982, testified he did not approve Edwards' bid and that Edwards' bid was not a cash discount as defined in Exhibit 13, section 2 definitions as a cash discount. A cash discount is a discount from the total amount if the invoice is paid within a specified number of days. Edwards' bid had an add-on to the total if the invoice was not paid within a specified period of days.

Because the college of agriculture at the University had its own business office, had the use of Federal funds, trust funds, and State funds, it would most likely take more than 15 days to make a payment. While it was possible a bill could be paid in 15 days, it was very impractical because the University had at least 40,000 purchase orders a year with up to 10 times that many invoices to process.

Robert Baker, the assistant director of purchases, testified as to the process of paying bills relating to the Allerton Trust Farms. Once the bill is received by accounts payable, it is forwarded to the agriculture accounting office. From there, the bill is forwarded to Professor Don Smith who manages the University Trust Farms and who would verify the quantity and quality of the materials received and approve the payment. The bill would go back through the agriculture accounting office and then back through the accounts payable

section of general accounting. There a check would be prepared and the bill paid. In reviewing the University's history in paying Edwards prior to 1982, Mr. Baker testified only once was payment made in less than 30 days and that was 20 days. The decision to deny the bid to Edwards was thoroughly discussed and legal advice was obtained from the University counsel.

Mark Sapoznik testified that he was a purchaser for the University of Illinois on August 31, 1982. He answered a phone call for Mr. Reuter who was not available and talked to Mr. Edwards. Mr. Sapoznik looked at the bids on Mr. Reuter's desk and read the numbers on the bids. Mr. Edwards asked if Edwards' bid was the low bid and Mr. Sapoznik told him that if payment was made in a certain amount of days his would be the low bid. He told Edwards he was the apparent low bidder. After several inquiries by Edwards, he testified he may have said, "You are the low bidder."

Mr. Sapoznik further testified he never told Edwards to start fulfilling the contract and never stated the contract had been awarded to Edwards. He only read off raw numbers. He told Edwards to contact Mr. Reuter, the buyer. Mr. Sapoznik testified he was not involved in this bid and made no decisions involving this bid. He had never dealt with the purchase of fertilizer to the farms. He did, however, have the delegated authority to issue a purchase order for this fertilizer.

In rebuttal, Mr. Edwards testified that the 15 days meant working days and not calendar days, but working days is not stated on the bid. The actual bid sheet states calendar days.

Purchases by the State Systems Universities of

Illinois are subject to the provisions of the Illinois Purchasing Act (Ill. Rev. Stat., ch. 127, par. 132 *et seq.*, as amended). Purchases are also regulated by *Regulations Covering Procurement and Bidding at State Systems Universities of Illinois.* These regulations were admitted in evidence as Joint Exhibit 13. Several sections of that document are particularly relevant in this case and are as follows:

"(a) Section 12(e) Bid speaks for itself. If the person reading the bid makes an error, the figure given in the bid shall govern.

(b) Section 14(a) Lowest and best bid. The awards will be made to the lowest bidder, considering price, responsibility and capability of bidder, availability of funds, and all other relevant facts, provided the bid meets the specifications and other requirements of the bid information ° ° °

(c) Section 14(b) Cash discounts. In determining the lowest bid, cash discounts, when stated separately, will be taken into account, unless stated *otherwise in the bid solicitation form.*

(d) Section 2(g) "Cash discount is a discount or an allowance deductible from the total amount of the invoice for payment within a specified number of days."

(e) *Section 8(d) Unit and total prices. The price for the units specified* in the bid shall be clearly shown for each individual item. Only one unit price shall be quoted for each item. The total price for the quantity requested must also be shown. In the event of discrepancy, the unit price shall govern unless otherwise expressly stated in the bid document.

(f) Section 15(a) Rejection of bids. Any bid which does not meet the requirements of the bid information and does not comply with these regulations may be rejected.

(g) Section 16(a) Binding contract with University purchase order. After the lowest and best acceptable bid has been determined, the University will send the successful bidder a purchase order or a formal contract accepting his bid.

(h) Section 16(b) Binding on bidder. The University's acceptance of a *bidder's offer will create a binding contract covering the following:*

    (1) All the specifications, terms and conditions in the bid information;
    (2) The provisions of these regulations;
    (3) *The bidder's price and terms of payment* (Emphasis added).

(i) Section 24(d) Computation of cash discounts. If the contractor allows a cash discount, the period of time in which the University must make payment to qualify for the discounts will be computed from the date the University (1) receives the invoice-voucher (correctly filled out) or (2)

receives and accepts the commodities or equipment, whichever is later
° ° °."

The bid in the present case was subject to these regulations. If Edwards' bid had been accepted and the University did not pay within 15 days, Edwards could demand and be entitled to $75,058 instead of $67,552.20. The bid by Edwards was confusing in that it does not state the unit price in full or the total price in full, but states those prices in terms of including the 10% discount. While the people of the State of Illinois would seem to have been best served by accepting this bid and walking the bill through the process for payment within 15 days, the evidence is that with the funding and bureaucratic setup, payment within 15 days was impractical and very unlikely.

Claimant seeks this Court to imply a contract by the oral statements of Mr. Sapoznik where the regulations require a written purchase order. Implied contracts with State entities are looked upon with disfavor. (See *Agles v. State* (1984), 37 Ill. Ct. Cl. 134.) The only time this Court has approved oral and implied contracts is when the services provided were of an emergency nature. (*Agles, supra.*) Such is not the case here.

While Mr. Sapoznik had apparent and even actual authority to contract, at most he told Edwards that his was the lowest bid. He did not tell Edwards he was awarded the contract and did not tell him he had the lowest and best bid. The regulations require awarding the contract to the lowest and best bid and the evidence clearly indicates Edwards' bid was not the best bid when the 10% penalty is added. The bid of Edwards also did not follow the regulations as it failed to set out the real unit price and real total price, less any discount. Further, the bid of Edwards did not properly state a

cash discount as defined in section 2(g) and a proper unit and total price as stated in section 8(d) of the regulations governing procurement and bidding at State Systems Universities in Illinois. As the bid was defective, the officials were correct in considering the bid a no-bid.

Mr. Sapoznik did not enter into a contract with Mr. Edwards. He never told Edwards that Edwards was awarded the contract. Mr. Edwards appeared to be conversant with the State's formal procedures of requiring a written purchase order. His reliance on Sapoznik's oral statements is misplaced. (See *Dunteman v. State* (1985), 38 Ill. Ct. Cl. 51.) This Court will not authorize payment of a claim by a vendor who is unable to prove a properly executed contract with the State of Illinois. (*Louge v. State* (1984), 36 Ill. Ct. Cl. 283.) Such is the case here.

Based on the foregoing, it is hereby ordered that this claim be, and hereby is, denied.