(No. 97-CC-0170–

BLACK KNIGHT PRODUCTIONS, INC., Claimant, *v.* THE UNIVERSITY OF ILLINOIS AT CHICAGO, BLACK STUDENT ASSOCIATION, Respondent.

*Order filed May 13, 1998.*

JAMES, JAMES, & MANNING (LUKE A. CASSON, of counsel), for Claimant.

BURDITT & RADZIUS (NORMAN P. JEDDELOH & PATRICK J. SULLIVAN, of counsel), for Respondent.

## ORDER

HESS, J.

This cause comes before the Court on motion of Respondent, the Board of Trustees of the University of Illinois, to dismiss, filed November 14, 1997, and motion of Claimant for oral argument, filed February 2, 1998. For the reasons discussed below, Claimant's motion for oral argument is denied and Respondent's motion to dismiss is granted.

### Claimant's Motion for Oral Argument

In its motion for oral argument, Claimant argues that it must be afforded an opportunity to rebut "additional materials" submitted by Respondent for the first time in Respondent's reply in support of its motion to dismiss. On February 10, 1998, Respondent filed its objections to Claimant's motion for oral argument stating that "any purported 'additional material' set forth by [Respondent] in its reply brief was simply a response to new matter not contained in [Claimant's] complaint but instead raised for the first time in [Claimant's] opposition to [Respondent's] Motion to Dismiss."

Section 790.200 of the Court of Claims Regulations (74 Ill. Adm. Code 790.200) states that "[t]here shall be

no oral argument on motions or objections to motions, except on motions to dismiss where, in the Court's discretion, oral arguments thereon would be of value to the Court." Having considered the pleadings of record, it is the Court's opinion that oral arguments in this instance would be of no value to the Court. Therefore, it is hereby ordered that Claimant's motion for oral argument be, and the same is, denied.

The Court will now consider the motion of Respondent to dismiss.

### Respondent's Motion to Dismiss

In ruling on a motion to dismiss, all facts properly pleaded in the complaint and those contained in exhibits made part of the complaint are to be taken as true for purposes of (and only for the purposes of) the motion. *Royal Dental Manufacturing v. State* (1989), 43 Ill. Ct. Cl. 252.

On July 22, 1996, Claimant filed its two-count complaint with the court clerk. In count I of its complaint, Claimant alleges that on July 31, 1992, Claimant and the Black Student Association of the University of Illinois at Chicago, Inc. (BSA), entered into the following contract:

"Contractual Agreement
between
BLACK KNIGHT PRODUCTIONS
and
BLACK STUDENT ASSOCIATION
of the
University of Illinois at Chicago

July 30, 1992

The BLACK STUDENT ASSOCIATION [hereafter BSA] has hired BLACK KNIGHT PRODUCTIONS [hereafter BKP], a non-profit company, to organize, coordinate and manage the First Annual African American College Expo/Fair (AACE). BSA is the main sponsor of the First AACE which will be held on UIC campus from Friday, July 31, 1992 through Sunday, August 2, 1992.

As defined by BSA, throughout this agreement the term *proceeds* shall mean all money collected and the term *profits* shall mean proceeds less expenses.

BSA and BKP understand that all door money *proceeds* are to be deposited into the BSA account by Monday, August 3, 1992. After all UIC incurred costs have been met, the BSA's percentage of the door money *profits* shall be fifteen percent (15%) of which five percent (5%) will go towards the *Grace Holt Scholarship Fund* and eighty percent (80%) of the door money *profits* are to be turned over to BKP no later than Thursday, August 6, 1992 to be distributed as follows:

45%   Chicago housing rehabilitation (South and West)
15%   Donated to Roseland Community Hospital
10%   Lewis University *Black Student Union*
10%   Chicago State University *Student Government Association*

BSA and BKP understand that the remaining five percent (5%) of the door money *profits* will remain in the BSA account for *at least* two months after the AACE to absorb any remaining UIC expenses associated with this event. After that time period, the five percent or its remains will be turned over to BKP. If other UIC expenses associated with the AACE arise after the five percent (5%) or its remains have been turned over to BKP, the expenses are to be paid 50/50 with Black Knight Productions paying fifty percent (50%) of the bill and BSA paying the remaining balance.

BSA and BKP understand that vendor sale proceeds are to be counted on the premises each night. Ten percent of the vendor *proceeds* is to be paid each night to the University of Illinois at Chicago for rental space. BSA, the sponsoring organization for this event, is entitled to a percentage of the *profits* from vendor sales. Thus, three percent (3%) of the profits from *all* vendor sales from three *all* days is to be paid to the BLACK STUDENT ASSOCIATION by Black Knight Productions *before* any money is turned over to BKP.

There shall be at least one BKP and one BSA staff member present at all times when handling, counting money associated with the AACE. BKP will receive copies of the receipts for all AACE deposits into the BSA account.

The concept of the First African American College Expo/Fair was developed on October 4, 1991 by Yett-i Howard, President of Black Knight Production in Matteson, Illinois. The Black Student Association of the University of Illinois at Chicago is a proud official sponsor of the First Annual African American College Expo/Fair.

The signatures below verify that the Black Student Association and Black Knight Productions understand that the contents of this contractual agreement are *binding* in order for this event to take place on UIC campus.

_____ Date: 7/31/92
Lisa M. Boyd, President Black Student Association

_____ Date: 7/31/92
Yett-i Howard, President Black Knight Productions

_____ Date: 7/31/92 Phone: [ ]"
                Witness

(Emphasis in original.)

The contract is signed by Lisa M. Boyd, President Black Student Association and Yett-i Howard, President Black Knight Productions. The contract also bears the signature of Christine Grgurich for University of Illinois at Chicago as "Witness." Claimant's count I goes on to allege that BSA breached the above contract.

In count II of its complaint, Claimant seeks breach of contract damages against Respondent. Claimant alleges it entered into a written contract with Respondent "whereby [University of Illinois at Chicago] UIC agreed to allow and permit [Claimant] to promote, manage and coordinate the AACE and UIC was at all times relevant herein in control of all facilities which were to be used in the execution of the event." (Paragraph 21 of Claimant's complaint.) Claimant further alleges that "UIC is held responsible for breach of the terms of the contract directly and under the theory of respondent [sic] superior." (Paragraph 23 of Claimant's complaint.)

Although the caption of the contract states that it is an agreement between Claimant and BSA, Claimant appears to allege that Respondent is a party thereto as a result of Ms. Grgurich signing the contract as a witness. Assuming arguendo that Ms. Grgurich was acting as an agent of Respondent, it is a well settled principle of law that in dealing with an agent of the State one must ascertain at his peril the authority of the agent, and the mere assertions of the agent are not sufficient to bind the State. (*New Life Development Corp. v. State* (1992), 45 Ill. Ct. Cl. 65, 86; *Melvin v. State* (1989), 41 Ill. Ct. Cl. 88; *Dunteman v. State* (1985), 38 Ill. Ct. Cl. 51.) "There are statutes dealing with State purchases and there are rules and regulations. These statutes, rules and regulations are all published and available to any vendor who cares to acquaint himself with them." (*Central Office Equipment Co. v. State* (1979), 33

Ill. Ct. Cl. 90 at 91.) "[A] purchase order emanating from an office or official authorized to obligate the funds of the State is a prerequisite to the establishment of an obligation * * * against the State." 33 Ill. Ct. Cl. at 91.

Respondent, citing *Rend Lake College Federation of Teachers v. Community College District* (5th Dist. 1980), 84 Ill. App. 3d 308, 405 N.E.2d 364, 39 Ill. Dec. 611, argues that the same principles apply in the case of Respondent. This Court agrees. The general rules concerning university organization and procedure of the University of Illinois are quite clear as to the party[ies] having authority to execute contracts on behalf of Respondent. The general rules in effect on July 31, 1992, the date of the contract in issue, state:

"ARTICLE II. BUSINESS ORGANIZATION AND POLICIES

SECTION 1. THE COMPTROLLER

As an officer of the Board of Trustees, and in accordance with the By-laws of the Board, the Comptroller shall . . .

(d) Sign contracts to which the University is a party, unless otherwise ordered by the Board in specific cases.

\* \* \*

SECTION 4. AWARD AND EXECUTION OF UNIVERSITY CONTRACTS

(a) Purchases, construction contracts, and other contracts shall be awarded by the Board of Trustees in accordance with applicable State law and with regulations adopted by the Board of Trustees . . .

(b) All contracts, other than purchase orders, shall be executed at least in duplicate, and the original thereof shall be filed with the Secretary of the Board of Trustees and remain in the custody of the Secretary . . .

(c) Contracts relating to appointments to the staff may be executed by the Secretary of the Board of Trustees. Agreements providing for the appointments of Resident Physicians and Dentists may be executed by the Chief of Staff of the University of Illinois Hospital. Purchase orders issued pursuant to awards made by the Board of Trustees may be signed by the University official in charge of the purchasing activity, as designated by the Vice-President for Business and Finance. Unless otherwise ordered by the Board of Trustees in specific cases, other contracts to which the University is a party shall be signed by the Comptroller of the Board of Trustees and attested to by the Secretary of the Board of Trustees.

***

## SECTION 5. DRAFTING AND APPROVAL OF UNIVERSITY CONTRACTS

***

(b) All contracts prior to the execution thereof shall be approved as to legal form and validity by the University Counsel, such approval to be endorsed in writing on the contract, provided that such approval and endorsement shall not be required with respect to individual contracts or extensions or renewals thereof, the form of which has been previously approved by the University Counsel as a standard and which contains no substantive changes or additions, other than those pertaining solely to the description of the project, the amount involved, and the term of the contract or extension."

In view of the general rules, Respondent cannot be considered as a party to the contract in issue because it was not signed by the comptroller of the Board of Trustees and attested to by the secretary of the Board of Trustees.[1] Assuming that Ms. Grgurich was in fact acting as an agent of Respondent and not merely as a witness to the execution of the contract in issue, the burden remained on Claimant to ascertain whether she had the authority to execute the contract on behalf of Respondent. Claimant failed to do so and, therefore, its claim against Respondent for breach of contract must also fail.

Claimant also alleges that Respondent is responsible for breach of the terms of the contract under the theory of *respondeat superior*. *Respondeat superior* is a tort doctrine, premised neither on contract principles or policies. *Industrial Indemnity Co. v. Vukmarkovic* (1st Dist. 1990), 205 Ill. App. 3d 176, 187, 150 Ill. Dec. 270, 562 N.E.2d 1073; *appeal denied* (1991), 136 Ill. 2d 544, 567 N.E.2d 332, 153 Ill. Dec. 374. Claimant fails to state or maintain against Respondent a claim for tortious interference of contractual relations or any other tortious action. Consequently, Claimant's claim in count II against Respondent for breach of

---

[1] The contract in issue is not a "standard" contract and thus to be enforceable against Respondent would have had to be signed by the Comptroller of the Board of Trustees and attested to by the Secretary of the Board of Trustees.

contract under the doctrine of *respondeat superior* necessarily fails. *Douglas Theatre Corp. v. Chicago Title & Trust Co.* (1st Dist. 1997), 288 Ill. App. 3d 880, 681 N.E.2d 564, 224 Ill. Dec. 249; *appeal denied* (1997), 174 Ill. 2d 558, 686 N.E.2d 1160, 227 Ill. Dec. 4 (1997).

For the foregoing reasons, it is hereby ordered that Respondent's motion to dismiss be, and the same is, granted and this cause is dismissed, with prejudice.