(No. 97-CC-2852–■)

ALDO M. SBIGOLI, D.D.S., Individually and as assignee of ALBERTA DAVIS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 19, 2000.*

LEVUN, GOODMAN, AND COHEN (SUSAN H. BOOKER, of counsel), for Claimant.

JIM RYAN, Attorney General (DARIN L. RASMUSSEN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

RAUCCI, C.J.

This cause is before the Court on a complaint filed by Claimant Aldo M. Sbigoli, D.D.S., individually and as assignee of Alberta Davis, complaining against the Respondent State of Illinois for breach of contract. A hearing

was conducted on October 28, 1999, at which the attorneys for the parties appeared and presented written joint stipulations that included facts that would have been testified to by Claimant and by Glenessa Gary, a CIGNA Health Care customer service representative. The parties stipulated to the foundation for 14 exhibits.

## I. Facts

During 1994, the State of Illinois provided a medical plan for most of its employees including Alberta Davis. During all relevant periods of time, Cigna Health Care ("CIGNA") was the third-party administrator of the State's medical plan. In general, the medical plan did not cover dental procedures, however, such services would sometimes be covered by the medical plan if ancillary costs were related to a medical injury or disease. Aldo M. Sbigoli began in private practice as an oral surgeon in 1990. He performed three medical procedures on Alberta Davis, a State employee, on November 29, 1994. He made a sinus augmentation, a bone graft to the maxilla and inserted dental implants. The State paid an 80% benefit for professional fees and 65% benefit for facility fees related to the sinus augmentation and the bone graft to the maxilla, but did not allow coverage for the dental implants. The State's insurance program was administered by CIGNA.

Dr. Sbigoli provided medical services to Ms. Davis as an oral surgeon. Ms. Davis was a patient of Dr. George Ditola. His diagnosis of Ms. Davis was that she suffered from advanced periodontal disease to the gums and bones and tissue atrophy causing bone loss that resulted in the loss of her remaining upper teeth. Through the procedure of grafting the bone of the sinus and upper jaw and placing implants, any further deterioration and bone loss would be averted. Full dentures were not a viable alternative, because she had a lower natural dentition and

the natural teeth would traumatize the upper jaw and hasten bone loss.

On September 28, 1994, Dr. Sbigoli contacted Glenessa Gary, a customer service representative of CIGNA, by telephone to determine the coverage for the above procedures. He was advised that the procedures were covered at 80% with a $100 deductible. A letter was sent via facsimile to CIGNA benefits department on October 24, 1994, requesting verification of coverage for Ms. Davis. On or about November 7, 1994, he received a facsimile letter from Glenessa Gary, dated November 3, 1994, confirming receipt of his preauthorization and indicating that x-rays were necessary for a determination of benefits. On November 10, 1994, he forwarded the x-rays with a letter of medical necessity describing the procedures.

On November 23, 1994, Dr. Sbigoli called Ms. Gary. She stated that the request was still pending and that the procedures would be covered although the level was not determined. He believed that some level of coverage was approved for all three procedures. The surgery took place on November 29, 1994. Claimant's bill and the one for the surgicenter were sent to CIGNA. He received a letter from Ms. Gary on November 29, 1994, after the surgery, informing him for the first time that the dental implants would not be covered.

Dr. Sbigoli billed $23,500 for the surgery of which $4,934 was paid leaving a balance due of $18,566. He was subsequently told by an unidentified person at CIGNA that dental implants were not covered under the State of Illinois plan. In response to his request to reconsider its denial, CIGNA referenced its "On Line Call Tracking" documentation showing that on November 23, 1994, he was told by Glenessa Gary that dental implants would not be covered.

Ms. Gary admits that she never personally told Dr. Sbigoli that dental implants would not be covered.

## II. The CIGNA Agreement

Claimant argues that Glenessa Gary had the authority, both express and implied, to bind the State when she approved Alberta Davis' benefits for dental implants. This authority flowed from CIGNA's agreement with the State to act as the administrative service organization. The agreement was authorized by the State Employees Group Insurance Act of 1971. 5 ILCS 375/1 et seq. (1994).

The agreement specifically refers to establishing an agency relationship between the State and CIGNA for the purpose of receiving, processing and disbursing payments for all claims. CIGNA had the express authority to approve or reject claims.

The "Member Benefits Handbook" (hereinafter referred to as "Handbook") references coverage at 80% for "medically necessary hospital admissions to perform dental services due to a medical condition." (See Member Benefits Handbook, p. 67, Exhibit No. 11.) The complete reference indicates the reimbursable is for "room and board" and the examples of medical condition are heart disease or hemophilia. Ms. Gary requested a letter of medical necessity, which was provided by Dr. Sbigoli, and may have mistakenly approved the dental implants, thereby altering the benefits available to Alberta Davis. The State recognized that the entity acting as administrator might make mistakes and included provisions for such events. The agreement provides that CIGNA will indemnify the State for any liability arising out of the performance of the agreement, unless the liability was "caused or materially contributed to by a mistake in judgment or computation of benefits under the program made in good faith and in the

exercise of ordinary care and reasonable diligence." (See Agreement, par. 7(d).) This is also evidenced by paragraph 7.3, which confers agency status on CIGNA and absolves it of any liability to third parties absent gross negligence, fraud or criminal conduct by CIGNA.

In the alternative, Claimant urges that the State had vested Ms. Gary with the apparent authority to bind the State. We have held that where the State vests a person with apparent authority to bind the State, and a claimant performs the services, the State cannot deny the person has the actual authority to bind the State (*Wilson Electrical Co. v. State* (1976), 31 Ill. Ct. Cl. 504; *Volland v. State* (1939), 10 Ill. Ct. Cl. 715). Claimant acknowledges that case law establishes a proposition that parties contracting with public entities are presumed to know their limitations in making contracts. However, there is nothing in the record to show that Dr. Sbigoli knew he was contracting with the State.

### III.  Respondent's Case In Chief

In a September 28, 1994, telephone conversation, Ms. Gary told Claimant that the bone grafting and sinus augmentation would be covered at 80% for professional services and 65% for facility fees. No conclusion was made as to coverage of the dental implants. Ms. Gary told Claimant to send proof of medical necessity and that the claim was subject to review. In response to Claimant's October 24, 1994, letter, Ms. Gary sent a fax dated November 7, 1994, stating that CIGNA was "unable to determine benefits without * * * x-rays."

On November 22, 1994, Dr. Sbigoli had a telephone conversation with Maggie Vega, a customer service representative of CIGNA. Ms. Vega placed the call on hold and discussed the situation with Ms. Gary who told Ms.

Vega that the nurses had not yet responded to the question of whether the dental implants would be covered. Ms. Gary presumes Ms. Vega informed Dr. Sbigoli that a determination had not been made.

On November 23, 1994, Ms. Gary called Dr. Sbigoli and left the message that benefits would be covered at 80% for professional service and 65% for facility fees for the sinus augmentation and bone grafting, but the dental implants would not be covered. She could not remember whether the message was left on voicemail or with a staff person. On November 29, 1994, Ms. Gary mailed a letter to Claimant memorializing essentially the same information.

Respondent argues that the dental implants were not covered by the State of Illinois medical plan and therefore Claimant is not entitled to reimbursement for this dental procedure. The Handbook contains two narrowly drafted circumstances that allow partial coverage of a dental procedure by the State's medical plan. The two coverages are "for services necessary as a result of an accidental injury to natural teeth caused by an external force"; and "fees for room and board for medically necessary hospital admissions to perform dental services due to a medical condition such as heart disease or hemophilia." The services rendered are not covered by either description.

Neither Ms. Gary nor CIGNA had the express or apparent authority to extend coverage for the placement of dental implants. CIGNA had only the limited authority to authorize "covered services," as defined by the Agreement, under the medical plan. See Agreement, par. 1.5.

We have held that apparent authority of an agent cannot be used to bind the State. *Black Knight Productions v. State* (1998), 50 Ill. Ct. Cl. 406; *Potter v. State* (1983), 36 Ill. Ct. Cl. 26. It is well settled that the theory

of *quantum meruit* does not apply against the State and oral or implied contracts are only enforced when provided in an emergency. *Melvin v. State of Illinois* (1989), 41 Ill. Ct. Cl. 88.

The cases cited by Claimant are anomalies, briefly written with no citations, and have been superseded by later cases.

## IV. Conclusion

The parties have stipulated that the witnesses are equally credible. Therefore, the testimony offered by each on disputed or ambiguous evidence must be given equal weight unless other evidence would tend to justify a different interpretation. There is no doubt that the length of time it took CIGNA to make its determination is unwarranted and caused some anxiety, if not confusion, amongst Alberta Davis and Dr. Sbigoli. Unfortunately, to be safe, the delay in making a determination by CIGNA and the absence of written confirmation of the alleged coverage should have caused a delay in the performance of services.

Dr. Sbigoli testified that Ms. Gary's telephone conversation of November 23, 1994, caused him to believe all services, including dental implants, would at a minimum be partially covered. He testified that one of his employees overheard this conversation. However, the testimony of this occurrence witness is not in the record. Ms. Gary's testimony is that she did not have a telephone conversation with Dr. Sbigoli on November 23, but instead left a message. One could argue that her lack of recall whether she left the message with a staff person or on voicemail would draw the credibility of her recall into question. However, Exhibit No. 13, which is an online call tracking record maintained by CIGNA indicates that telephone call was made on November 23, 1994, and a message was

left. It does not indicate that a telephone conversation was conducted with anyone in Dr. Sbigoli's office. Essentially, we are presented with a factual dispute as to whether the telephone conversation took place and: (1) if it did, what did Ms. Gary say; or (2) if it did not, what message did she leave. The only written evidence in relation to this factual dispute is Exhibit No. 13, indicating that a message was left and not indicating that a conversation took place.

The Court need not make a determination on the legal issue as to whether Ms. Gary or CIGNA had the authority to cause the State to be liable for a mistaken interpretation of the benefits available pursuant to the medical plan. However the provision of the Agreement, cited by Claimant in support of the proposition that Claimant had authority to bind the State, does not appear to grant that authority to CIGNA or Ms. Gary.

We find that Claimant has not met his burden of proof to establish that he was informed by CIGNA that the dental implants procedure was covered. Accordingly, we must deny the claim.

It is therefore ordered, adjudged and decreed that this claim is denied and forever barred.